UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

ALFONSO RAMIREZ, JR.

       Plaintiff,

v.                                                                                    CIV 06-53 MCA/KBM

JOANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

# PROPOSED FINDINGS & RECOMMENDED DISPOSITION

## I.  Background

Plaintiff Alfonso Ramirez previously worked full-time in shipping and receiving and as a forklift driver, and part-time delivering newspapers. He stopped working in December 2001 at age thirty-six, and applied for benefits in 2002 just before his thirty-seventh birthday. Ramirez alleged that pain in his neck, back and wrists disabled him as of the date he quit working. *See, e.g., Administrative Record* ("*Record*") at 18, 40, 46, 51, 60, 98-99, 112, 140, 148-156, 158, 162, 254, 332-34.

Administrative Law Judge ("ALJ") David R. Wurm found that Plaintiff has the residual functional capacity to perform limited light work. With the aid of the testimony from a vocational expert, he identified three such jobs Plaintiff can perform – ticket taker, bench assembler and parking lot attendant, bearing Dictionary of Occupational Titles ("DOT") numbers of 344.667-010, 915.473-010, and 706.684-022, respectively. *Id.* at 21. ALJ Wurm therefore denied benefits, finding Plaintiff not disabled at Step 5, under the framework of Medical-Vocational

Rules 202.21 and 202.22. *See id.* at 21, 23. The Appeals Council declined review in December 2005, thereby rendering the ALJ's decision final. *Id.* at 6.

This matter is before the Court on Plaintiff's motion to reverse and remand, where he contends that the ALJ committed two errors at the vocational expert stage: failing to include obesity and hypertension as nonexertional impairments in the hypothetical question to the vocational expert, and failing to investigate the conflict between the vocational expert's testimony and the DOT descriptions. *See Docs. 13-14.*

The entire record has been read and carefully considered. The issues are straightforward, as are the ALJ's decision and the parties' briefs. Therefore, I confine my recitation of the facts to those necessary to my disposition. I agree with Plaintiff on one count and therefore recommend that the matter be remanded to the Commissioner for further proceedings.

## II.  Standard of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *E.g., Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005); *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003). My assessment is based on a "meticulous" review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *See Hamlin,* 365 F.3d at 1214; *see also Langley,* 373 F.3d at 1118.

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214; *Doyal,* 331 F.3d at 760. An ALJ's

decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record of if there is a mere scintilla of evidence supporting it." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214.

# III.  Analysis

### *A.  Nonexertional Impairments & Hypothetical Question*

### 1.  The Hypothetical Question Included Obesity Limitations

As the Commissioner notes, Plaintiff did not assert obesity or hypertension as disabling conditions.  *Doc. 15* at 8.  Instead, he asserted that the "constant" pain in his back, neck and wrists was disabling.  *See e.g., Record* at 40, 46, 98, 148-156, 158, 162, 332-34.  The ALJ's comprehensive and detailed opinion nevertheless discussed Plaintiff's obesity.  In determining which complaints were "severe" impairments, for example, ALJ Wurm stated:

> The medical records in the case file reveal that Mr. Ramirez is also affected by obesity, which aggravates the symptoms of his back and joint problems.  (Ex. 14F at 2-3; 15F at 4-7; and 16F at 2)[.]  At the time of hearing[,] he testified that he now weighs 350 pounds.  He testified that he is no longer a candidate for surgery because of his weight.  There is evidence in the record the Mr. Ramirez's weight has interfered with assessment as well as treatment for his back.  (See, e.g., Ex. 3F at 2)[.]  I have, therefore, considered the indirect effects of obesity has had on Mr. Ramirez' ability to work.  SSR 02-1p (2002).
>
> Based upon the medical evidence of record, summarized above, I find that Mr. Ramirez' (sic) has medically determinable impairments to his lumbar spine, specifically degenerative disc disease, and degenerative joint disease affecting his wrists and knees.  ***These impairments are made more severe by morbid obesity.  I am persuaded that Mr. Ramirez' impairments result in limitation in his ability to perform such work-related tasks as walking, standing, and lifting.  They are, therefore, considered "severe" for purpose of this evaluation.***  20 CFR §§ 404.1520(c), 404.1521, 416.920(c), and 416.921.  I am not persuaded that these

3

> impairments meet or medically equal the severity described for any impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4.  20 CFR §§ 404.1525-26 and 416.925-26. There is no specific listing for obesity.  However, I have considered Mr. Ramirez' impairments in combination and specifically find that his impairments do not meet the severity criteria described for presumptively disabling disorders of the spine in Listing 1.04.  20 CFR §§ 404.1520(d) and 416.920(d).  It is therefore necessary to consider whether Mr. Ramirez retains the residual functional capacity, in spite of his impairment, to perform his past relevant work or other work that exists in the national economy.

*Id.* at 19 (emphasis added).

In a discussion that demonstrates he was thoroughly conversant with the record, ALJ Wurm's explained in his assessment of residual functional capacity why he found Plaintiff's assertion of disabling pain was not credible.  *See id.* at 19-20.  This credibility finding is not challenged in this appeal.  *See Doc. 14.*  ALJ Wurm also looked to medical opinions from Plaintiff's doctors, but noted that "Mr. Ramirez has not established an ongoing treatment relationship with a doctor who would be particularly qualified to give such an opinion. (See Exhs. 4F at 2; 5F: 8F; and 13F-14F; but see Ex. 10F at 1)[.]"  *Id.* at 20.  Therefore, he "relied to a great extent on the opinions expressed by the consultants who are asked by the [Department of Vocational Rehabilitation ("DVR")] to assess Mr. Ramirez' ability to work. (Ex. 3F; see also Ex. 4F)" and also "considered the findings made by the medical experts who reviewed Mr. Ramirez' record and disability reports for the Administration (Ex. 10F)[.]  20 CFR §§ 404.1527 and 416.927; and SSR 96-6p (1996)."  *Id.* at 20.  The consultant and expert doctors were well aware of Plaintiff's obesity when they issued their opinions.  *See, e.g., id.* at 174, 182, 245.  The ALJ's reliance on these opinions is likewise not challenged in this appeal.  *See Doc. 14.*

ALJ Wurm concluded that

4

> in spite of his impairments, Mr. Ramirez has the residual functional
> capacity for a range of light work.  Specifically, he is limited to jobs
> that require him to lift no more than 20 pounds; [occasional][1] bend,
> stoop, kneel, crouch, crawl, or climb; and jobs that would not
> require prolonged gripping or handling.  He is also limited to jobs
> that would allow him to change positions, from sitting to standing,
> frequently throughout the day.  This finding is consistent with the
> evaluations gathered by DVR as well as Mr. Ramirez' reports to
> the Administration and to DVR evaluators concerning his activities
> of daily living, throughout the period under review.

*Record* at 20-21.  Again, the ALJ's residual functional capacity finding is not challenged in this appeal.  The hypothetical he posed to the vocational expert is based on that finding – light work "with additional limits" of "sits/stand option, frequent changes of position within that, in other words, the individual would not have to remain totally stationary, whether sitting or standing.  Occasional bending, stooping, kneeling, crouching and crawling.  Occasional climbing, limited to stairs, not ladders or scaffolds.  No prolonged gripping or handling."  *Id.* at 353.

As Plaintiff notes, "It is settled that the hypothetical question 'must include all (and only) those impairments borne out by the evidentiary record.'"  *Smith v. Barnhart,* 172 Fed. Appx. 795, 800 (10th Cir. 2006) (quoting *Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995)).  Clearly, obesity qualifies as an "'nonexertional impairment which ***might*** significantly restrict a claimant's ability to perform the full range of . . . work.'"  *Burns v. Apfel,* 1998 WL 278535 at *3 (10th Cir. 1998) (emphasis added) (quoting *Lucy v. Chater,* 113 F.3d 905, 909 (8th Cir. 1997)).  However, I disagree that ALJ Wurm "failed to include any information in the hypothetical question regarding obesity and its effect on Mr. Ramirez's endurance and joints."  *Doc. 14* at 7.

As illustrated above, ALJ Wurm in fact evaluated the impact of Plaintiff's obesity on his

---

[1] Qualifier supplied based on the hypothetical given at the hearing.  *Record* at 353.

overall condition. *See Doc. 14* at 7. He defined Plaintiff's residual functional capacity assessment by including the limitations in functioning he attributed to Plaintiff's obesity. He then mirrored the hypothetical on that finding. Thus, contrary to Plaintiff's contention, the obesity limitations were in fact given to the vocational expert. Furthermore, since the underlying credibility and residual functional capacity findings are not challenged, Plaintiff cannot condemn the hypothetical upon which they are based.[2]

## 2. Failure To Specifically Discuss Hypertension Was Not Erroneous Or, Alternatively, Harmless

I find the same is true of the challenge to omitting hypertension from the hypothetical, but

---

[2] *E.g., Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996) ("we have already affirmed the ALJ's findings with respect to Decker's condition and his partial credibility. Because these findings are accurately reflected in the ALJ's hypothetical inquiries, the vocational expert's testimony provided substantial evidence"); *Wiley v. Chater,* 967 F. Supp. 446, 452 (D. Kan. 1997) ("The ALJ may restrict his questions to those limitations he has found to exist based upon substantial evidence in the record. . . . The Court has already upheld the ALJ's finding that plaintiff's subjective allegations of pain are not credible. A claimed impairment that is found to be not credible or is otherwise not supported by substantial evidence need not be included in a hypothetical. . . . Therefore the ALJ did not err in relying on the vocational expert's testimony elicited by a hypothetical question that included only those impairments the ALJ found to be credible.") (citations omitted); *Lucero v. Barnhart,* CIV04-1090 RHS (Doc. 16 at 10; "Because the hypothetical posed to the VE included all the limitations that the ALJ included in his RFC assessment, the VE's answers provided a proper basis for the ALJ's disability decision at step five."); *see also Roth v. Shalala,* 45 F.3d 279, 283 (8th Cir. 1995) ("The ALJ found that Roth suffers from a back impairment, and he incorporated this condition into the hypotheticals posed to the vocational expert. The ALJ also found that Roth suffers from an affective disorder, and this condition was likewise incorporated into the hypotheticals posed."); *Lusk v. Commissioner of Social Sec.,* 106 Fed. Appx. 405, 411 (6th Cir. 2004) ("Because the ALJ incorporated the functional limitations-including nonexertional-identified by Lusk's treating physician, Dr. Andreas, [into the hypothetical] there is substantial evidence in the record to support the ALJ's assessment of his nonexertional limitations."); *Sebree v. Apfel,* 1999 WL 999740 at * 2 (10th Cir. 1999) ("Because the ALJ determined that claimant's testimony as to the extent of his limitations was neither completely credible nor supported by objective medical evidence, he was not required to include all complaints in the hypothetical questions."); *Hill v. Chater,* 1996 WL 41853 at *4 -5 (10th Cir. 1996) ("As discussed above, the ALJ did not err in relying on Dr. McGovern's RFC assessment. He therefore was entitled to use this assessment as the basis for a hypothetical question."); *Kunkel v. Barnhart,* 2002 WL 246679 at *5 (D. Minn. 2002) ("one of the hypotheticals posed to the vocational expert matches the characteristics of the residual functional capacity. Consequently, no error in the hypothetical occurred and the testimony of the vocational expert in response to the hypothetical constitutes substantial evidence supporting the ALJ's decision that plaintiff was not disabled.").

for slightly different reasons. The ALJ did not discuss Plaintiff's hypertensive condition at all. Instead, at the hearing, high blood pressure was mentioned by Plaintiff at the hearing in response to his attorney's question whether he had "any problems with blood pressure." Plaintiff responded that he had "just received some blood pressure pills . . . a 30-day supply," and nothing else on the subject appears in the hearing transcript. *Record* at 335.

  Hypertension was also mentioned throughout a few of the medical records. Those indicate that high blood pressure was first noticed in January 2003, hypertension was first diagnosed in June 2003, and medicine was prescribed for the condition starting in August 2004. Nevertheless, Plaintiff did not, and does not, assert that his hypertension is disabling or limits his capacity in any way. His testimony and medical records do not indicate any limitations based on this condition either. The doctor whom Plaintiff's former attorney asked to fill out a questionnaire indicated that Plaintiff's hypertension could be controlled by medication and, indeed, after he started taking medication his blood pressure improved. This "treating" source did not give a specific opinion about Plaintiff's residual functional capacity, much less an opinion that his hypertension limited him in any degree.[3]

---

[3] *See Record* at 207-208 (duplicated at 278-79) (1/21/03 medical record showing blood pressure reading of 189/108 and physician's assistant note that Plaintiff "need[ed] BP treated"); *id.* at 286 (6/30/03 medical record showing blood pressure reading of 150/96 and nurse note that Plaintiff was "instructed to see MO [medical officer] has no PCP [primary care physician]"); *id.* at 285 (7/1/03 medical record showing blood pressure reading of 160/100 and nurse note that it is elevated from day before and that Plaintiff plans to keep his appointment for the next day); *id.* at 284 (duplicated at 311) (07/02/03 medical record showing "HTN, ST, I" assessed as "New Dx"); *id.* at 282-833 (and partially duplicated at 310-11) (07/31/03 medical record showing blood pressure reading of 135/82, that "HTN, ST, I" was chronic problem starting "6/03"); *id.* at 295 (duplicated at 308) (08/09/04 medical record showing blood pressure reading of 171/97); *id.* at 294 (duplicated at 307) (08/16/04 medical record showing blood pressure reading of 145/93 and that he was started on medication); *id.* at 299-301 (attorney RFC chart to Dr. Laura Blanchard and her 9/18/04 responses states Plaintiff's diagnoses include hypertension and notes his 8/16/04 blood pressure reading of 145/93, but also states the hypertensive condition can be "stabilized" with medication); *id.* at 309 (08/18/04 medical record shows blood pressure reading of 128/80); *id.* at 306

To be included in the hypothetical to a vocational expert, a condition must be "severe" enough to impair functioning. The mere presence of a condition is not sufficient to require its inclusion in the hypothetical to the vocational expert particularly where, as here, Plaintiff does not assert the condition limits him and does not challenge the residual functional capacity assessment upon which the hypothetical was based.[4] Accordingly, I find no error in failing to include hypertension in the hypothetical to the vocational expert.

Alternatively, I find that any error in failing to consider hypertension presents the extraordinary situation where a harmless error doctrine should be used to supply a missing ALJ finding. No reasonable administrative factfinder, following the correct analysis, could have concluded that hypertension significantly limits Plaintiff's residual functional capacity, given that Plaintiff does not assert any limitations based on the condition, his medical records do not support any limitations based on the condition, and the related condition of obesity[5] was already factored

---

(09/16/04 medical record showing blood pressure reading of 136/80).

[4] *See, e.g., Helmer v. Barnhart,* 112 Fed. Appx. 705, 712 (10th Cir. 2004) ("Plaintiff claims that the ALJ failed to propound a proper hypothetical question to the VE because the question he posed 'did not contain any hand limitations.' . . . As set forth above, there is insufficient evidence in the administrative record to support plaintiff's claim that he suffers from a severe hand impairment. As a result, plaintiff's claim is without merit. *See Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996) (holding that hypothetical question to VE need only include impairments that are supported by evidentiary record)."); *Culler v. Massanari,* 9 Fed. Appx. 839, 843 (10th Cir. 2001) ("the law does not require that plaintiff's mental and emotional impairments be disabling to warrant inclusion in the ALJ's hypothetical questions to the VE; it requires only that they be severe, i.e., significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c) (defining a severe impairment)."); *see also supra,* note 3.

[5] *See, e.g.,* www.medicinenet.com/high_blood_pressure/page7.htm#toc15bp ("Obesity is common among hypertensive patients, and its prevalence increases with age. In fact, obesity may be what determines the increased incidence of high blood pressure with age. Obesity can contribute to hypertension in several possible ways. . . . greater output of blood . . . greater stiffness (resistance) in their peripheral arteries . . . insulin resistance and the metabolic syndrome . . . tendency for the kidneys to retain salt . . . Some obese people, especially if they are very obese, have a syndrome called sleep apnea. . . . [s]leep apnea may contribute to the development of hypertension . . . because the repeated episodes of apnea cause a lack

into the hypothetical. *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir. 2005); *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004).

### 3. DOT Discrepancy Requires Remand

The harmless error analysis cannot be applied to salvage the ALJ's failure to resolve the discrepancies between the DOT descriptions and the vocational expert's testimony, however. After the vocational expert was instructed on the hypothetical, which included "[n]o prolonged gripping or handling," she answered that Plaintiff would not be able to perform his past relevant work, but would be able to perform the "DOT" jobs ALJ Wurm subsequently relied upon. He then asked her if her testimony was "consistent with the DOT?" to which she replied "yes." *Record* at 355.

Yet, the DOT descriptions for ticket taker, bench assembler and parking lot attendant ***all*** provide that "handling" is "frequently" required. *See Doc. 14,* attachments. I am unpersuaded by the Commissioner's argument that the ALJ was somehow bound by the VE's finding that the prolonged handling restriction of the hypothetical and the requirement set forth in the job description are not in conflict. *See Doc. 15* at 11-12. Again, on their face, the hypothetical ***precluded*** prolonged handling while each of the three occupations cited by the VE and relied upon by the ALJ in fact *require* frequent handling. Because of this apparent discrepancy, the ALJ should have questioned the vocational expert in more detail and elicit an explanation. *See Doc. 14* at 5. In a very recent unpublished decision, the Tenth Circuit stressed that "an ALJ must elicit a reasonable explanation for any material conflicts between a VE's testimony and occupational

---

of oxygen (hypoxia). The hypoxia then causes the adrenal gland to release adrenalin and related substances.").

9

information in the DOT." *Garcia v. Barnhart,* 2006 WL 1923984 at \*\*5-6 (10th Cir. July 13, 2006) [6]

---

[6] The relevant portion of that unpublished opinion provides in full:

> Mr. Garcia also argues that the ALJ improperly relied on VE testimony that conflicted with the DOT. Specifically, in response to the ALJ's hypothetical questioning that indicated Mr. Garcia could perform only "routine, repetitive" and "simple" work, App. II at 284, 285; see also id. at 240-41, the VE identified jobs (charge account clerk and surveillance system monitor) for which, as explained below, the DOT specifies a higher reasoning level (level 3).
>
> This court adheres to the rule, adopted in *Haddock,* 196 F.3d at 1087, reaffirmed in *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005), and codified in SSR 00-4p, that ***an ALJ must elicit a reasonable explanation for any material conflicts between a VE's testimony and occupational information in the DOT.*** More specifically relevant here, in Hackett we found a ***facial conflict*** between a claimant's "inability to perform more than simple and repetitive tasks" and the "level-three reasoning" required in the DOT for jobs identified by the VE, and, consequently, reversed and remanded for an explanation, if any, that would resolve the conflict so as to permit reliance on the VE's testimony. *Hackett,* 395 F.3d at 1176. Mr. Garcia argues Hackett requires reversal and remand here.
>
> In response, the Commissioner again resorts to *post hoc* justifications to support the ALJ's decision. As noted earlier, such justifications cannot succeed unless they are so conclusive that no reasonable ALJ could have resolved the disputed matter in any other way. *Allen,* 357 F.3d at 1145. We doubt any of the Commissioner's efforts are so compelling; indeed, some are inadequate on their face. For example, the Commissioner insists the ALJ was referring to physically simple and routine tasks and, thus, not suggesting any mental restriction. But, as *Hackett* itself reflects, "simple and routine" is a limitation associated with the mental, not physical, aspects of work (indeed, it is a cognitively-based limitation typically restricting the claimant to physical labor, not a physical restriction on such labor), and the context does not suggest the ALJ used the phrase in another sense. Rather, the context indicates the ALJ was addressing Mr. Garcia's lack of learned skills and limited education (and in that regard we note Mr. Garcia had been held back a grade in elementary school and had failed the written test for military service). *See* App. II at 283. The Commissioner also argues that the evidence does not actually support a limitation to simple and routine work. This line of argument, however, is foreclosed by the fact "that the ALJ himself noted the limitation." *Saiz,*

Neither *Garcia* nor the *Hackett* and *Haddock* decisions cited therein provide that the vocational expert's opinion on whether a conflict exists is conclusive, or that a one-word response is a sufficient explanation when there is a facial conflict. The relevant Ruling suggests the contrary:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. ***When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.***
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS

---

392 F .3d at 399.

> We need not respond point-for-point to all of the Commissioner's efforts to justify the ALJ's decision insofar as it implicates the VE-DOT conflict, nor must we resolve whether the one occupation identified by the VE unaffected by the conflict (jewelry preparer, involving 160 state jobs) reflects work in sufficient numbers to conclusively establish the requisite numerical significance, *see Allen,* 357 F.3d at 1144-45, as we are remanding the case on account of other error in any event. But we do emphasize the analytical significance and consequences of the ALJ's finding regarding the cognitive demands Mr. Garcia is able to meet and reaffirm that, if the ALJ seeks to properly account for these on remand, he must heed the guidance provided by this court's decisions in *Hackett* and *Haddock.*
>
> The judgment of the district court is REVERSED and the cause is REMANDED with instructions to remand, in turn, to the Commissioner for further proceedings consistent with this order and judgment.

*Garcia v. Barnhart,* 2006 WL 1923984 at **5-6 (10th Cir. July 13, 2006) (emphasis added).

> testimony rather than on the DOT information.
>
> * * * * *
>
> Reasonable explanations for such conflicts, which may provide
> basis for relying on the evidence from the VE or VS, rather than the
> DOT information, include, but are not limited to the following:
>
> Evidence from VEs or VSs can include information not listed in the
> DOT.  The DOT contains information about most, but not all,
> occupations.  The DOT's occupational definitions are the result of
> comprehensive studies of how similar jobs are performed in
> different workplaces.  The term "occupation," as used in the DOT,
> refers to the collective description of those jobs. Each occupation
> represents numerous jobs.   Information about a particular job's
> requirements or about occupations not listed in the DOT may be
> available in other reliable publications, information obtained directly
> from employers, or from a VE's or VS's experience in job
> placement or career counseling.
>
> The DOT lists maximum requirements of occupations as generally
> performed, not the range of requirements of a particular job as it is
> performed in specific settings. A VE, VS, or other reliable source
> of occupational information may be able to provide more specific
> information about jobs or occupations than the DOT.

*Social Security Ruling 00-4p,* 2000 WL 1898704 at **2-3 (2000).

  Here, the vocational expert's one-word answer could mean two different things.  On the one hand, perhaps she did not realize that there was a discrepancy between her testimony and the DOT jobs she identified concerning the handling requirements.  In that case, the ALJ's reliance on an error by the vocational expert cannot constitute substantial evidence for his decision.  On the other hand, the vocational expert may have recognized the discrepancy but was of the opinion that it was of no import.  However, the ALJ did not elicit her reasons for that opinion or evaluate those reasons as required by the Tenth Circuit and Ruling 00-4p.  In either case, remand is required.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion *(Doc. 13)* be granted in part, and the matter remanded to the Commissioner for further proceedings.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE